# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

|  |  |  |  |
|---|---|---|---|
| | Plaintiff, | : | Case No. 1:11-cr-063 |
| | | | Also Case No. 1:14-cv-080 |
| | | | |
| | | | Chief Judge Susan J. Dlott |
| - vs - | | | Magistrate Judge Michael R. Merz |

PHILLIP AYERS,

|  |  |  |
|---|---|---|
| | Defendant. | : |

---

# REPORT AND RECOMMENDATIONS

---

This case is before the Court on Defendant Phillip Ayers' Motion to Vacate, Set Aside, or Correct a Sentence, pursuant to 28 U.S.C. §2255 (Doc. No. 126). On the Court's Order (Doc. No. 128), the Government filed an Answer (Doc. No. 129) and Ayers has filed a Reply (Doc. No. 132). The record has been supplemented on the Government's Motion (Doc. No. 130).

**Procedural History**

Defendant Phillip Ayers was indicted by the Grand Jury for this District on five counts of violating federal law (Doc. No. 2). The Indictment charges conspiracy with Wesley Showes and Joe Lee Hall to possess with the intent to distribute Schedule I controlled substances (Count 1),

1

actual possession with intent to distribute in excess of 100 grams of heroin (Count 2), possession with intent to distribute a measurable amount of heroin (Count 3), possession of two firearms in furtherance of drug trafficking (Count 5), and possession of a firearm after having been convicted of a felony (Count 6). *Id.* Ayers through counsel filed a motion to suppress (Doc. No. 22) which Chief Judge Dlott denied after hearing (Doc. No. 33).

The case was set for jury trial on January 4, 2012 (Doc. No. 44), but the parties entered into a Plea Agreement which was filed December 12, 2011 (Doc. No. 47). A plea hearing was held the next day at which Ayers pled guilty to Counts 2 and 5 in return for dismissal of the remaining counts against him. Almost a year later and by then represented by attorney Peter Rosenwald, Ayers moved to withdraw his plea (Doc. No. 96). Chief Judge Dlott denied that motion (Doc. No. 105) and sentenced Ayers on February 5, 2013, to the term he is now serving (Doc. Nos. 107, 108). Ayers appealed to the Sixth Circuit (Doc. No. 113) which dismissed the appeal over Ayers' objection, holding

> Ayers entered into a plea agreement with the government waiving his right to appeal any sentence or conviction except pursuant to 18 U.S.C. § 3742. He also reserved his right to appeal the denial of a motion to suppress. Ayers's sole argument on appeal is that the district court erred in accepting a plea of guilty to the charge of possession of a firearm in furtherance of a drug trafficking offense, due to the lack of a sufficient factual basis as required by Federal Rule of Criminal Procedure 11(b)(3) and therefore the waiver provision does not bar his appeal. The government argues that Ayers waived all his rights to an appeal, only reserving the right to appeal the denial of a motion to suppress. Thus, the government asserts that because Ayers is not appealing the issue he reserved for appeal, his appeal should be dismissed.
>
> As a general rule, a defendant may waive any right, including a constitutional right, in a plea agreement if the waiver is knowingly

2

and voluntarily made. *United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012); *United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012); *United States v. Wilson*, 438 F.3d 672, 673 (6th Cir. 2006). An appellate-waiver provision also does not preclude an appeal asserting that the statutory maximum has been exceeded. *See United States v. Caruthers,* 458 F.3d 459, 472 (6th Cir. 2006). Before accepting a guilty plea, the district court "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). Ayers knowingly and voluntarily waived his right to appeal. Reviewing the record, there is no evidence that the district court judge violated Rule 11(b). Further, both the indictment and the plea agreement state that Ayers possessed the firearms to protect his home and the contents within the home. There was a factual basis in the plea agreement and indictment by which the district court decided to accept the guilty plea. Thus, there is no violation of Rule 11 that would preclude the enforcement of the appeal waiver.

*United States v. Ayers*, Case No. 13-3161 (6th Cir. Aug. 12, 2013)(unpublished; copy at Doc. No. 125.) The instant Motion under 28 U.S.C. § 2255 followed on January 24, 2014 (Doc. No. 126). Briefing and consideration of a possible evidentiary hearing delayed the ripeness of this matter until October 16, 2014 (See Doc. No. 145).

Ayers pleads the following grounds for relief:

**Ground One**:  Ineffective Assistance of Plea Counsel

**Supporting Facts:**  Attorney Richard Goldberg never advised Ayers of the critical elements of possession of a firearm in furtherance of a drug trafficking offense, particularly of the required nexus between the firearm and the drug offense.  Had Ayers been advised of the critical elements, he would not have pled guilty.  Because he did not exercise dominion or control over the weapons, he is actually innocent.

3

**Ground Two:**  Ineffective Assistance of Trial Counsel

**Supporting Facts:**  Attorney Goldberg failed to contact Kalana Rutland to whom the firearms in question were registered.  She was prepared to testify that Ayers did not know the firearms were at her residence, that Ayers did not exercise dominion over the firearms, that Ayers was not involved in drug trafficking from that address, and that the drug paraphernalia found there had no tie to Ayers.  Attorney Rosenwald was ineffective for failure to call Rutland at the hearing on the motion to withdraw the guilty plea; had he done so, the Court would have permitted the plea to be withdrawn.

**Ground Three:**  Trial Court Error in Not Suppressing Evidence

**Supporting Facts:**  The Court denied the suppression motion on the basis of facts not in evidence, to wit, that the probable cause for arresting Ayers arose from finding heroin on co-defendant Showes. Attorney Goldberg was ineffective in the suppression hearing; had he performed effectively, the motion to suppress would have been granted.  Attorney Nunnari provided ineffective assistance of appellate counsel by not raising this claim on appeal.

**Ground Four:**  Unlawful Search

**Supporting Facts:**  Ayers' cell phone was tracked pursuant to a "ping" order issued under 18 U.S.C. § 2703, but the issuing judge should have required a showing of probable cause.  The search warrants prior to the § 2703 order were based on stale information. Suppression counsel was ineffective for not raising these issues. Appellate counsel was also ineffective for not raising them.

(§ 2255 Petition, Doc. No. 126, PageID 566-71.)

## Generally Applicable Law

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003).  In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure.  *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*).

In each of his four Grounds for Relief, Ayers has alleged he received ineffective assistance of counsel; in Grounds Three and Four he alleges both ineffective assistance of trial counsel and ineffective assistance of appellate counsel.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a

5

> defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

> With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> > Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

> As to the second prong, the Supreme Court held:

> > The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance

6

of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson, supra.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson, supra.*

An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).

Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir, 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Appellate counsel is not ineffective for failure to predict the development of the law. *Thompson v. Warden*, 598 F.3d 281 (6th Cir. 2010), *citing Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001)(not ineffective assistance of appellate counsel to fail to anticipate *State v. Foster* in an appellate district which had ruled the other way.) *Accord, Carter v. Timmerman-Cooper*, 2010 U.S. App. LEXIS 10549 (6th Cir. 2010).

# Analysis

## Ground One:  Ineffective Assistance of Trial Counsel at Plea

In his First Ground for Relief, Ayers asserts his trial attorney at the time of the plea, Richard Goldberg, did not explain the elements of possession of a firearm in furtherance of a drug trafficking offense and if he had explained the elements, Ayers would not have pled guilty.

During the plea colloquy, Chief Judge Dlott asked Mr. Oakley, the prosecutor in this case, to read the elements of the offenses into the record.  He read:  "For Count 5, the elements of possession of a firearm in furtherance of a drug trafficking offense are that he possessed a firearm in furtherance of a drug trafficking offense and that the – the aforementioned acts occurred in the Southern District of Ohio."  (Transcript, Doc. No. 263.)  Immediately thereafter, Ayers admitted that he was guilty of each of those elements.  *Id.*  Then Task Force Officer Baker testified to the facts of the offenses.  He said

> A search of Ayers' residence recovered a Colt – Cobray SWD, Model M-11, nine millimeter semiautomatic pistol Serial Number 890051390, loaded with 30 rounds of ammunition, and a Smith & Wesson, Model SW40VE, .40 caliber semiautomatic handgun, Serial Number DTE7781, loaded with 13 rounds of ammunition. The weapons were possessed as a mean of protection of the house and contents and were thus is furtherance of drug trafficking operation conducted by Ayers.

*Id.*  at 265.  Ayers then admitted that what the agent said was correct and denied that it was incorrect in any way.  *Id.*  at PageID 265-66.  Ayers then again said he was pleading guilty because he was in fact guilty.  *Id.*  at PageID 266.

Ayers makes two claims about his communications with attorney Richard Goldberg which are relevant to his first claim for relief.  The first is that Goldberg did not tell him the elements of the 924(c) offense, possession of a firearm in furtherance of a drug trafficking offense. Assuming the truth of this allegation and that such failure was deficient performance on Goldberg's part, Ayers suffered no prejudice as a result because he was informed on the record at the time of the plea of what the elements were.  Thus Ayers' first sub-claim – ineffective assistance of trial counsel by failure to advise of the elements – fails because Ayers cannot prove any prejudice resulted.

The second sub-claim Ayers makes is that Goldberg did not tell him that his possession of a key to the Creekview apartment was not sufficient to prove constructive possession of the contents, including the firearms. Again, the Magistrate Judge assumes the truth of this allegation, but finds it to be irrelevant. For in making his guilty plea, Ayers admitted much more than possession of a key to the Creekview Drive residence – he admitted it was his residence, not just that he had a key. Furthermore, when he moved to withdraw his guilty plea on this very point, Chief Judge Dlott found that there was far more than possession of a key.

Ayers motion to withdraw the guilty plea was based on exactly the same claim he makes here: "Ayers alleges that due to ineffective assistance of counsel, he pled guilty to a charge of unlawful possession of firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1), without fully understanding the nature of the charge and the elements of the offense." (Order Denying Defendant's Motion to Withdraw Guilty Pleas, Doc. No. 105, PageID 314.) Chief Judge Dlott noted that during the search of the Creekview Drive residence, agents found "personal papers belonging to Ayers, including an electric bill." *Id.* at PageID 315. At the hearing on the motion to withdraw plea

> Ayers testified at the December 19, 2012, hearing on his motion to withdraw his guilty pleas that though the statement had identified the Creekview Drive residence as "Ayers['] residence," he actually had lived at a different address during the months prior to his arrest. He admitted that a friend of his lived at the Creekview Drive residence and that he had a key to the residence which he used to visit his friend two or three times a week. However, he claimed that until his arrest, he had been unaware of the firearms found at that residence. He further testified that the firearms were not his and that they were registered to his friend, a fact he claims he told his former attorney, Richard Goldberg, prior to entering into the plea agreement. Additionally, though he admitted that tools of the drug trade were found in that house, he maintained that no one sold drugs at that location.

10

*Id.* at PageID 316. In considering the Motion to Withdraw, Chief Judge Dlott gave careful attention to Ayers' assertions of innocence of Count 5 and wrote:

> As indicated above, by signing the statement of facts attached to his plea agreement and by further acknowledging those facts during his change of plea hearing, Ayers admitted to possessing firearms in furtherance of the drug activity to which he was pleading guilty. Ayers also at least implicitly admitted to having lived at the Creekview Drive residence by failing to object to the description of that dwelling as "Ayers['] residence." (See Doc. 47 at 7, Page ID # 145.) Ayers claims he repeatedly told Goldberg that he did not "own" the weapons, and that the weapons were not registered to him, but those facts are not dispositive of the issue of possession. It was not until after Ayers began researching 18 U.S.C. § 924 that he began to minimize his connection with the Creekview Drive residence or to claim ignorance of the very existence of the weapons prior to his arrest. During his change of plea hearing, Ayers had ample opportunity to object to the statement of facts or to clarify any statement he believed to be untrue or misleading, but he gave no indication that he either disagreed with or did not fully understand the facts that he admitted to or the crimes to which he pled.
>
> The crux of Ayers' motion centers on the circumstances surrounding the entry of his guilty plea. Ayers alleges that Goldberg either did not fully understand or did not explain to Ayers the facts the Government would be required to prove in order to prevail on Count 5, specifically the requirement that the Government demonstrate that the firearm or firearms in question were possessed for the purpose of advancing or promoting the commission of the underlying drug offense. Ayers suggests that had he been aware of that requirement, he would not have pled guilty to Count 5 because he does not believe the evidence in this case would demonstrate a nexus between the firearms and the drug offense to which he plead guilty. [Footnote omitted.] Accordingly, Ayers claims that due to ineffective assistance of counsel he did not enter his guilty plea in a knowing, intelligent, and voluntary manner.

*Id.* at 322-23.  Chief Judge Dlott recited the *Strickland v. Washington* standard and then distinguished this case from the case on which Ayers principally relied, *United States v. Maye,* 582 F.3d 622 (6th Cir. 2009).  *Id.* at 324-25.  She found that the presence of drug trafficking paraphernalia at the Creekview Drive residence supported the nexus of the firearms with the firearms and noted that Ayers admitted the firearms were kept there "as a means of protection of the house and contents and . . . in furtherance of the drug trafficking operation."  *Id.* at PageID 326.  Chief Judge Dlott concluded Ayers had not proved Goldberg provided deficient representation or that he would not have pled guilty if the representation had been different.  *Id.* at PageID 326.

Ayers admits that there are parallels between what he testified to at the Motion to Withdraw Hearing and the facts he now wants to prove in support of his Motion to Vacate (Petition, Doc. No. 126, PageID 594).  However, he says, the focus is different:

> Here, in a petition for habeas corpus, the issue is not what Petitioner Ayers failed to disclose during the change of plea colloquy, . . . but rather what his attorney did or did not inform him relative to the critical elements of the firearms charge.  In that Petitioner Ayers' Affidavit claims that these conversations occurred outside the record and files of this case, indeed in private consultations, this Court under 28 U.S.C. § 2255(b), must conduct an evidentiary hearing in order to make findings of fact and conclusions of law.  Moreover, Petitioner Ayers provides additional evidence here of his innocence to Count Five in the form of an Offer of Proof of Ms. Rutland, Exhibit C, who lived at the Creekview residence, and who owned the firearms.  This Offer [of] Proof sets forth facts that clearly exonerate Petitioner from possession of a firearm in furtherance of a drug trafficking crime, constructive or otherwise.  This evidence was never previously provided to this Court, including at the December 19, 2012 hearing.

(Petition, Doc. No. 126, PageID 595 and footnote 7.)

First of all, the "Offer of Proof" as to Ms. Rutland has no evidentiary value at all. Ayers'
representation of what Ms. Rutland would be willing to testify to is at best hearsay and could be
completely self-serving speculation. Having made this observation, the Magistrate Judge
ordered Ayers to provide a sworn affidavit from Ms. Rutland (Doc. No. 133, PageID 742).
Thereafter, on Ayers' Motion (Doc. No. 134) and in anticipation of a possible evidentiary
hearing, the Court appointed counsel. Although counsel successfully moved to expand the
record (Doc. No. 138), no affidavit of Ms. Rutland has been filed.

Secondly, to the extent the Motion relies on averments on Ayers' own Affidavit (Doc.
No. 126-1, PageID 618-20), Ayers expressly waived an evidentiary hearing (Doc. No. 137,
PageID 756).

Given this state of the record, Chief Judge Dlott's ruling regarding this claim as part of
the Motion to Withdraw guilty plea is the law of the case. Ayers has not proven he received
ineffective assistance of trial counsel with respect to his plea of guilty to the firearms charge,
Count 5 of the Indictment, and Ground One should be dismissed with prejudice.


**Ground Two: Ineffective Assistance of Trial Counsel**


In his Second Ground for Relief, Ayers asserts Mr. Goldberg provided ineffective
assistance of trial counsel when he did not contact Ms. Rutland regarding the ownership and
possession of firearms found at the Creekview Drive address whose possession by Ayers formed
the factual basis of his conviction on Count 5. He further claimed Attorney Rosenwald provided

ineffective assistance of trial counsel when he did not call Ms. Rutland as a witness at the Motion to Withdraw Plea hearing.

In the absence, again, of any affidavit from Ms. Rutland about what she would have testified to, Ayers cannot show prejudice arising from Goldberg's failure to contact her or Rosenwald's failure to call her to testify.

Therefore the Second Ground for Relief should be dismissed.

**Ground Three:  Failure to Suppress Evidence**

In his Third Ground for Relief, Ayers asserts he is confined on an unconstitutional conviction because the trial court should have suppressed the evidence of heroin found on him after his arrest with co-defendant Wesley Showes  He asserts Chief Judge Dlott denied the suppression motion by assuming facts not in evidence, to wit, that probable cause to arrest Ayers arose from finding heroin on the person of co-defendant Wesley Showes (Petition, Doc. No. 126, PageID 569). Ayers claims Mr. Goldberg provided ineffective assistance of trial counsel in the way he handled this question at the suppression hearing and Mr. Nunnari, his appellate attorney, provided ineffective assistance of appellate counsel in not raising the claim on appeal.

Having held a hearing on Ayers' motion to suppress, Chief Judge Dlott denied it in a written opinion. *United States v. Ayers*, 2011 U.S. Dist. LEXIS 123532 (S.D. Ohio Oct. 25, 2011).  She found that the Drug Enforcement Administration had begun an investigation of Ayers, who was then on federal supervised release for a prior drug conviction in November

2010. *Id.* at *2-3. Having performed surveillance on Ayers for a number of months, agents learned he and co-defendant Wesley Showes had gone to Detroit, spent a short period of time in a high-drug-activity neighborhood, and then began to return to Cincinnati on Interstate 75. Having observed a minor traffic violation by Ayers, who was driving, agents had their vehicle stopped by a uniformed crew. During a search subsequent to a pat down of Showes, a large quantity of heroin was found in his underwear. *Id.* at *9. When the stop was made, both men appeared nervous and both had their pants unzipped. *Id.* Both men were arrested and drugs were subsequently found on Ayers' person during a search incident to the arrest.

During the suppression hearing, Ayers argued that the discovery of drugs on Ayers' person did not give agents probable cause to arrest him. Relevant Supreme Court authority was found in *Maryland v. Pringle*, 540 U.S. 366 (2003). Chief Judge Dlott wrote:

> Ayers argues that *Pringle* is distinguishable because in that case the drugs were found in the car and possession, ownership, or control of the drugs was not clear, whereas in the instant case, the drugs were clearly in Showes' possession. Were this a case in which officers had simply pulled Ayers and Showes over for a traffic stop, without having any prior knowledge of the men or of their alleged trafficking involvement, the Court might agree that the differences between *Pringle* and the instant case are material. However, in this case, the officers had substantial additional information giving rise to a belief that Ayers was engaged in a common enterprise with Showes. This Court has already discussed in great detail the facts that led up to the *Terry* stop and the observations made by Officer Davis upon approaching Ayers' vehicle. As stated above, those facts at the least established reasonable suspicion to justify the *Terry* stop. It would not have taken much more to push the officers' suspicion over the probable cause threshold. The discovery of the heroin on Showes confirmed the officers' suspicion that Ayers and Showes had traveled to Detroit to pick up narcotics for further distribution in the Cincinnati area. Under the circumstances of this case, the fact that officers found the heroin on Showes rather than in the vehicle does

> not lessen the probable cause to arrest Ayers. Accordingly, the
> Court finds that Ayers' arrest was constitutionally permissible and
> denies Ayers' motion to suppress.

*Id.* at *36-38.

Ayers quotes testimony by Cincinnati Police Officer James Davis as to why Ayers was arrested indicating Ayers was arrested for "the drugs" on Showes' person or "information undercover officers had about Mr. Ayers." (Brief in Support of § 2255 Petition, Doc. No. 126, PageID 601). From Chief Judge Dlott's decision, it is clear that the initial stop of the vehicle Ayers was driving arose from both the traffic violation and the information the agents had which gave rise to the reasonable suspicion that Ayers and Showes were transporting heroin from Detroit to Cincinnati. Once the stop was made, the reasonableness of the suspicion was increased by the nervousness of Ayers and Showes and the fact their pants were unzipped. The level of evidence rose from reasonable suspicion to probable cause when the large quantity of heroin was found in Showes' underpants.

Attorney Goldberg's alleged deficient performance consisted in

> fail[ing] to ask the key question of the entire suppression hearing,
> [i.e.] if Officer Davis and/or Officer Woods had 'squeezed, slid, or
> otherwise manipulated" the content of Co-Defendant Showes'
> package prior to it becoming "immediately apparent" as
> contraband If the answer to this question was yes, as verified by
> the videocam evidence [Footnote omitted], then this case falls
> squarely within the scope of <u>Minnesota v. Dickerson</u>, 508 U.S.
> 366, 378, 113 S. Ct. 2130, 124 L. Ed.2d 334 (1993), and the heroin
> recovery would have been illegal. Instead, Attorney Goldberg
> determined that he had no standing to contest Showes' search, a
> fatal and deficient decision in light of the extent and scope of the
> <u>Terry</u> stop upon both driver and codefendant Showes and
> passenger Petitioner Ayers.

(Doc. No. 126, PageID 602).  Ayers has failed to show how the failure to ask this question on the basis of lack of standing was deficient performance.  Indeed, Ayers had no standing to challenge the search of Showes.  The exclusionary rule protects the privacy interests of those who are searched. *Jones v. United States*, 362 U.S. 257 (1960). Ayers had no reasonable expectation of privacy in the contents of Showes' underpants.

Because Goldberg was correct in his understanding of Ayers' lack of standing, it was not ineffective assistance of trial counsel to fail to ask what Ayers calls the "key question."  Because Chief Judge Dlott correctly found that, under all the circumstances, the heroin found in Showes' underpants created probable cause to arrest both Ayers and Shoes, Mr. Nunnari did not provide ineffective assistance of appellate counsel in failing to raise this claim on appeal.  Ground Three should therefore be dismissed with prejudice.

**Ground Four:  Unlawful Real Time Cellphone Tracking**

In his Fourth Ground for Relief, Ayers asserts that it was unlawful for agents to obtain real-time tracking of his cellphone which was used as a substantial part of the investigation leading up to the traffic stop during which he was arrested (§ 2255 Motion, Doc. No. 126, PageID 604—09.  Ayers also asserts the probable cause relied on in successive search warrants was stale and Officer Schrage's testimony at the suppression hearing and in the search warrant affidavits is contradictory.  *Id.*  at 609-10.  He asserts Mr. Goldberg's failure to raise these points in the suppression proceedings constituted ineffective assistance of trial counsel.  *Id.*  at PageID 610.  He makes the same assertion about Mr. Nunnari's failure to pursue this claim on appeal.  *Id.*

The United States argues in its initial response that, because these claims were not raised in the suppression proceedings or on appeal, the claims are procedurally defaulted unless Ayers can show ineffective assistance of counsel, both trial and appellate, as excusing cause and prejudice from the failure to raise them (Response, Doc. No. 129, PageID 661-62.)

After Ayers filed his Reply (Doc. No. 132), the Court appointed counsel at his request (Notation Order granting Doc. No. 134.) Counsel then moved, without opposition, to expand the record to include supporting documents for the Fourth Ground for Relief (Doc. No. 138) and filed an Additional Brief in Support of Count 4 (Doc. No. 139). The Government responded (Doc. No. 142) and Petitioner's substitute counsel filed a Reply in support (Doc. No. 145).

As Ayers pled Ground Four, there were three subclaims:

1. The ping order and related search warrants violated Ayers' Fourth Amendment rights.

2. Mr. Goldberg, who was suppression counsel, provided ineffective assistance in not raising subclaim 1.

3. Mr. Nunnari, who was appellate counsel, provided ineffective assistance of appellate counsel in not raising either subclaim 1 or subclaim 2 on appeal.

(§ 2255 Motion, Doc. No. 126, PageID 604.)

The Additional Brief filed by counsel focuses on subclaim 2 and with good cause. The Court concludes

Subclaim 1 was waived by Ayers entry of a guilty plea to Counts 2 and 5 of the Indictment. A guilty or no contest plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt. *Menna v. New York,* 423 U.S. 61 (1975); *Tollett v. Henderson*, 411 U.S. 258 (1973).

Subclaim 3 is without merit. Because Subclaim 1 had been waived by the guilty plea, it could not properly have been raised on appeal. As shown by the Sixth Circuit's ruling on the issue Ayers attempted to appeal but had not reserved for appeal, it is very likely the appellate court would have enforced the limitations on appeal in the Plea Agreement. Appealing on Subclaim 1 would have violated those limitations. Subclaim 2 is also outside the issues reserved for appeal and, in any event, Ayers suffered no prejudice from failure to include it because ineffective assistance of trial counsel claims are preserved for collateral attack whether or not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999).

The appropriate focus of the analysis on Ground 4 then where counsel has placed it, on Subclaim 2 – the assertion Mr. Goldberg provided ineffective assistance of trial counsel by not challenging the ping order and search warrants.

Ayers' § 2255 counsel[1] argue Ground Four as if the question were, de novo, whether the fruits of the warrants and ping order should be suppressed. The structure of their argument is that there are a number of good reasons why the fruits should be suppressed. The unspoken additional premises of their reasoning are (1) any argument we can make could also have been made by Mr. Goldberg and (2) any argument that could have been made should have been made. This reasoning leaves no room for trial attorney discretion. The argument misses the Supreme Court's command in *Strickland*: "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

---

[1] Carla Morman of the law firm of Bieser, Greer & Landis was initially appointed to represent Mr, Ayers (Notation Order Granting Doc. No. 134). During the pendency of this matter, Ms. Morman left the State of Ohio and was replaced by her partner, David Williamson (Doc. Nos. 140, 141). Both are members of this Court's Criminal Justice Act Panel.

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689.

Mr. Goldberg presented a strong suppression case. He had an arguably pretextual stop – it was for failure to signal a lane change on the interstate. He had a client on whom nothing was found at the scene and where the drug dog check yielded no results from the vehicle. As Chief Judge Dlott acknowledged, he had a good arguable distinction from the *Pringle* case; although she ended up disagreeing, she recognized the strength of the argument.

Goldberg also litigated the suppression motion along with the co-defendant Showes whose pants had to be cut open to retrieve the drugs. Since Ayers' arrest was a fruit of the search of Showes, success for Showes on the motion would have spelled success for Ayers. Thus Mr. Goldberg cannot rightly be accused of slipshod or careless practice in litigating the more promising suppression issues. Ayers has not shown it is deficient performance for an attorney to fail to make every colorable argument that could be made in support of a motion to suppress.

Ayers has also not shown prejudice resulting from Mr. Goldberg's omission of these issues. That is, he has not shown it is likely the motion to suppress would have been granted if these arguments had been made to Chief Judge Dlott. Because the merits of the possible motion are the focus of the Additional Brief, they require extensive discussion.

The factual background of the investigation that led to Ayers' arrest was recited at the suppression hearing (Transcript, Doc. No. 120) and summarized in the Additional Brief (Doc. No. 139, PageID 780-82). Briefly, the DEA commenced an investigation of Ayers as a heroin supplier in Cincinnati in November 2010. In the course of the investigation, three search warrants were obtained from judges of the Hamilton County Common Pleas Court (Exhibits 1, 2,

and 3 to Doc. No. 138).  Eventually the same affiant, Cincinnati Police Officer Josh Schrage, obtained from another Common Pleas Judge an Order under 18 U.S.C. § 2703(d) for, inter alia, Real Time Precision Tracking (ping) information on a telephone number associated with Mr. Ayers, 916-240-4455. *Id.*  at Ex. 4 (hereinafter the "Ping Order").  To obtain that Order, Officer Schrage made a purported statement of probable cause, sworn to under oath before the issuing judge, the procedure which would be required under Fed. R. Crim. P. 41 for obtaining a search warrant.[2]  *Id.*  Using information obtained pursuant to that Order, the DEA and cooperating Cincinnati police tracked Ayers' telephone on March 18, 2011, from Cincinnati to Detroit and back until he was stopped and eventually arrested with Showes.  These facts give rise to a number of arguments made in the Additional Brief.

**1.      18 U.S.C. § 2703(d) does not authorize issuance of the Ping Order.**

Ayers first claims 18 U.S.C. § 2703(d) does not authorize a ping order such as was issued here.  Counsel cite various courts which have held that 18 U.S.C. § 2703(d) does not on its face authorize issuance of ping orders.  (Additional Brief, Doc. No. 139, PageID 786, citing *In the Matter of an Application of The United States for an Order (1) Authorizing the use of a Pen Register and a Trap and Trace Device and (2) Authorizing Release Of Subscriber Information And/Or Cell Site Information,* 396 F. Supp. 2d 294, 307-309, 314 (E.D.N.Y 2005)(Orenstein, M.J.); *In the Matter of the Application of the United States of America for an Order Authorizing the Installation and Use of a Pen Register and a Caller Identification System on Telephone Numbers and the Production of Real-time Cell Site Information*, 402 F. Supp. 2d 597, 600-602 (D. Md. 2005)(Bredar, M.J.); *In the*

---

[2] Although the text of 18 U.S.C. § 2703(d) does not require search warrant formality, some courts have required this process.

*Matter of an Application of the United States of America for an Order Authorizing Disclosure of Location Information of a Specified Wireless Telephone*, 849 F. Supp. 2d 526, 574-578 (D. Md. 2011)(Gauvey, M.J); *In Re Application For Pen Register and Trap/Trace Device With Cell Site Location Authority*, 396 F.Supp. 2d 747, 757-760 (S.D. Tex. 2005)(Smith, M.J.).

While these opinions all stand for the proposition for which they are cited [Stephanie – cite check.], none are controlling or preferred authority in this Court.  See S. D. Ohio Civ. R. 7.2(b)(2).  None of these opinions distinguishes ping orders issued on sworn affidavits of probable cause, such as the one in this case, from those issued merely upon application and a showing of "reasonable grounds to believe . . . [the results] are relevant and material to an ongoing criminal investigation."  § 2703(d).

## 2.      The Ping Order Searches Were Unconstitutional

Beyond the scope of the statute argument, Ayers contends the Ping Order searches were unconstitutional under the Fourth Amendment.  The Ping Order authorized receipt of real time tracking information for a period of sixty days from February 3, 2011, although receipt ended when the arrest occurred on March 18, 2011.  Ayers argues receipt of that information constituted a search and invaded his reasonable expectation of privacy.  He relies on *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), where the court overturned a conviction based in part on "tracking Jones' movements 24 hours a day for four weeks with a GPS [global positioning satellite] device they had installed on his Jeep without a valid warrant." *Id.*  at 555.  The D.C. Circuit distinguished *United States v. Knotts*, 460 U.S. 276 (1983), in which the Supreme Court held that a "person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another," (460 U.S. at 281) on the basis that the surveillance in Jones' case was far more extensive than in *Knotts*.

22

At the time Mr. Goldberg filed the Motion to Suppress here, June 22, 2011 (Doc. No. 22), a petition for certiorari was pending in *Maynard* and it was granted five days later, *sub nomine United States v. Jones*, 131 S. Ct. 3064 (June 27, 2011). The Supreme Court the next year affirmed dismissal of the case against Jones, but relied in part on the fact that installation of the GPS tracking device on Jones' car without a warrant involved a physical trespass on Jones' property, thus reverting to common-law bases for Fourth Amendment analysis which had been little used since *Katz v. United States*, 389 U.S. 347, 351 (1967). *United States v. Jones,* 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012). The Supreme Court did not endorse the *Maynard* court's rationale. In any event, failure to rely on *Maynard* while it was pending on certiorari did not constitute deficient performance on Mr. Goldberg's part and it is unlikely Chief Judge Dlott would have felt compelled to follow it here.

In *United States v. Forest*, 355 F.3d 942 (6th Cir. 2004), the Sixth Circuit followed *Knotts* and denied suppression of a search based on cell-site data "used to track [Garner's] movements only on public highways." *Id.* at 950-51. Ayers acknowledges *Forest*, but claims his "situation is vastly different" because "he was tracked everywhere he went including the private residences where he slept." (Additional Brief, Doc. No. 139, PageID 788.) This is a principal point with Ayers' counsel, who describe tracking him while he is asleep as a "search" and a "severe intrusion." *Id.* at PageID 788-89.

This argument vastly overstates the information transmitted by the cellphone. All it reveals to the cellphone provider is its location. It does not tell the provider (or the police to whom the provider passes the information) anything about what the possessor of the cellphone is doing, including whether he is asleep. If Ayers had left his cellphone at home or turned it off, it would not have sent the signal to the provider enabling tracking. From inside his house, the only information the cellphone gave the provider was that Ayers's cellphone was there.

The second point to be noted is that authorities made no prosecutorial use of the information transmitted from inside Ayers residence. Rather, it was his travel on public highways which led to

the reasonable suspicion that he was returning to Cincinnati from Detroit with a large quantity of heroin on March 18, 2011. One can imagine a law enforcement use for location information from inside a home, e.g., if they were investigating an arson fire at a location and a suspect's cellphone had been there at the time the fire was set. But the only use made in this case of location information from the residence is that it assisted police in knowing when Ayers was leaving and thereby exposing himself to public view.

Although it had not been decided while the motion to suppress was pending here, *United States v. Skinner,* 690 F.3d 772 (6th Cir. 2012), is directly contrary to Ayers' position. In *Skinner*, police used real time tracking data from a cellphone to locate Skinner with a motorhome full of marijuana on the public highways. Affirming denial of the motion to suppress, the Sixth Circuit held:

> There is no Fourth Amendment violation because Skinner did not have a reasonable expectation of privacy in the data given off by his voluntarily procured pay-as-you-go cell phone. If a tool used to transport contraband gives off a signal that can be tracked for location, certainly the police can track the signal. The law cannot be that a criminal is entitled to rely on the expected untrackability of his tools.[1] Otherwise, dogs could not be used to track a fugitive if the fugitive did not know that the dog hounds had his scent. A getaway car could not be identified and followed based on the license plate number if the driver reasonably thought he had gotten away unseen. The recent nature of cell phone location technology does not change this. If it did, then technology would help criminals but not the police. It follows that Skinner had no expectation of privacy in the context of this case, just as the driver of a getaway car has no expectation of privacy in the particular combination of colors of the car's paint.
>
> This conclusion is directly supported by *United States v. Knotts*, 460 U.S. 276, 103 S. Ct. 1081, 75 L. Ed. 2d 55 (1983).
> * * *

> There is no inherent constitutional difference between trailing a
> defendant and tracking him via such technology. Law enforcement
> tactics must be allowed to advance with technological changes, in
> order to prevent criminals from circumventing the justice system.
> The Supreme Court said as much in *Knotts*, noting that, "[i]nsofar
> as respondent's complaint appears to be simply that scientific
> devices such as the beeper enabled the police to be more effective
> in detecting crime, it simply has no constitutional  foundation. We
> have never equated police efficiency with unconstitutionality, and
> we decline to do so now." *Id*. at 284. In drawing this conclusion,
> the Court discussed *Smith v. Maryland*, 442 U.S. 735, 744-45, 99
> S. Ct. 2577, 61 L. Ed. 2d 220 (1979), where a defendant was found
> to have no reasonable expectation of privacy in the numbers he
> dialed on his phone, even after that information was automated by
> the phone company. The Court compared this technology to giving
> the numbers to a telephone operator, where they would not be
> confidential: "We are not inclined to hold that a different
> constitutional result is required because the telephone company has
> decided to automate." *Knotts*, 460 U.S. at 283. Similar reasoning
> compels the conclusion here that Skinner did not have a reasonable
> expectation of privacy in the location of his cell phone while
> traveling on public thoroughfares.
>
> Skinner's case also falls squarely within this court's precedent in
> *United States v. Forest*, 355 F.3d 942 (6th Cir. 2004).

*Skinner*, 690 F.3d at 777-78.

Ayers argues *Skinner* did not exist as controlling precedent when Mr. Goldberg filed the

motion.  While this is true, *Skinner* had become controlling precedent in August 2012, a full year

before the Sixth Circuit decided Ayers' case.  Thus *Skinner* would have controlled the outcome

on appeal.

The Sixth Circuit took pains in *Skinner* to distinguish *United States v. Jones*, 132 S. Ct.

945, 181 L. Ed. 2d 911 (2012), noting the case turned on the Government's intrusion on Jones'

property.

No such physical intrusion occurred in Skinner's case. Skinner himself obtained the cell phone for the purpose of communication, and that phone included the GPS technology used to track the phone's whereabouts. The majority in *Jones* based its decision on the fact that the police had to "physically occup[y] private property for the purpose of obtaining information." 132 S. Ct. at 949. That did not occur in this case. Indeed, the *Jones* opinion explicitly distinguished *Knotts* on this ground—that trespass was not an issue in *Knotts*—and in no way purported to limit or overrule the Court's earlier holding in *Knotts. Id.* at 951-52. Moreover, *Jones* does not apply to Skinner's case because, as Justice Sotomayor stated in her concurrence, "the majority opinion's trespassory test" provides little guidance on "cases of electronic or other novel modes of surveillance that do not depend upon a physical invasion on property." *Id.* at 955 (Sotomayor, J., concurring).

*Skinner*, 690 F.3d at 780.

Ayers also distinguishes *Skinner* because it did not involve the extensive tracking which occurred both here and in *Jones* (Additional Brief, Doc. No. 139, PageID 789).  That concern was raised not by the majority, but in Justice Alito's concurrence.  Both Justice Alito and the majority recognized there was "little precedent for what constitutes a level of comprehensive tracking that would violate the Fourth Amendment.."  *Skinner*, 690 F. 3d 680.  While the *Skinner* court noted the point, its decision did not turn on that point.  As suggested by Ayers, in the wake of *Jones* and *Skinner*, the length of tracking accomplished in this case may raise Fourth Amendment issues.

## 3.    The December 7, 2010, and January 14, 2011, Search Warrants Were Not Supported by Probable Cause

Ayers also asserts Goldberg provided ineffective assistance of trial counsel when he failed to challenge the December 7, 2010, and January 14, 2011, search warrants on the ground

that they were not supported by probable cause.  However, there was no evidence seized by virtue of those two warrants which was sought to be used against Ayers so there was nothing to suppress.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that Ayers' § 2255 Motion be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion, it is also respectfully recommended that he be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis.*

December 4, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).